## *PRELIMINARY PRINT*

# VOLUME 603 U. S. PART 1

### PAGES 1–42

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 26, 2024

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# CASES ADJUDGED

IN THE

# SUPREME COURT OF THE UNITED STATES

AT

OCTOBER TERM, 2023

---

## SNYDER *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE SEVENTH CIRCUIT

No. 23–108.   Argued April 15, 2024—Decided June 26, 2024

Page Proof Pending Publication

Federal and state law distinguish between two kinds of payments to public officials—bribes and gratuities.   Bribes are typically payments made or agreed to *before* an official act in order to influence the public official with respect to that future official act.   Gratuities are typically payments made to a public official *after* an official act as a reward or token of appreciation.   While American law generally treats bribes as inherently corrupt and unlawful, the law's treatment of gratuities is more nuanced.   Some gratuities might be innocuous, and others may raise ethical and appearance concerns.   Federal, state, and local governments have drawn different lines on which gratuities and gifts are acceptable and which are not.

For example, Congress has established comprehensive prohibitions on both bribes and gratuities to federal officials.   If a federal official accepts a bribe for an official act, federal bribery law provides for a 15-year maximum prison sentence.   See 18 U. S. C. §201(b).   By contrast, if a federal official accepts a prohibited gratuity, federal gratuities law sets a 2-year maximum prison sentence.   See §201(c).

In 1984, Congress passed and President Reagan signed a law now codified at 18 U. S. C. §666 that, as relevant here, extended the gratuities prohibition in §201(c) to most state and local officials.   Congress reversed course after two years and amended §666 to avoid the law's "possible application to acceptable commercial and business practices."

1

H. R. Rep. No. 99–797, p. 30 (1986). As amended, the text of § 666 now closely resembles the bribery provision for federal officials, § 201(b), and makes it a crime for most state and local officials to "corruptly" solicit, accept, or agree to accept "anything of value" "intending to be influenced or rewarded in connection with" any official business or transaction worth $5,000 or more. §§ 666(a)(1)(B), (b). That crime carries a 10-year maximum prison sentence. § 666(a).

This case involves James Snyder, who is the former mayor of Portage, Indiana. In 2013, while Snyder was mayor, Portage awarded two contracts to a local truck company, Great Lakes Peterbilt, and ultimately purchased five trash trucks from the company for about $1.1 million. In 2014, Peterbilt cut a $13,000 check to Snyder. The FBI and federal prosecutors suspected that the payment was a gratuity for the City's trash truck contracts. But Snyder said that the payment was for his consulting services as a contractor for Peterbilt. A federal jury ultimately convicted Snyder of accepting an illegal gratuity in violation of § 666(a)(1)(B). The District Court sentenced Snyder to 1 year and 9 months in prison. On appeal, Snyder argued that § 666 criminalizes only bribes, not gratuities. The Seventh Circuit affirmed Snyder's conviction.

*Held*: Section 666 proscribes bribes to state and local officials but does not make it a crime for those officials to accept gratuities for their past acts. Pp. 10–20.

(a) Six reasons, taken together, lead the Court to conclude that § 666 is a bribery statute and not a gratuities statute—text, statutory history, statutory structure, statutory punishments, federalism, and fair notice. Pp. 10–18.

(1) The statutory text strongly suggests that § 666—like § 201(b)—is a bribery statute, not a gratuities statute. The dividing line between § 201(b)'s bribery provision and § 201(c)'s gratuities provision is that bribery requires an official to have a corrupt state of mind and to accept (or agree to accept) a payment intending to be influenced in an official act. Section 666 shares the defining characteristics of § 201(b)'s bribery provision. By contrast, § 666 bears little resemblance to § 201(c), which contains no express *mens rea* requirement. Pp. 10–12.

(2) The statutory history reinforces that result. When enacted, § 666 borrowed language from § 201(c), the gratuities statute for federal officials. Two years later, Congress amended § 666 to model it instead on § 201(b), the bribery statute. It would be strange to interpret § 666, as the Government suggests, to mean the same thing now that it did before the amendment. P. 12.

(3) Statutory structure reinforces that § 666 is a bribery statute, not a two-for-one bribery-and-gratuities statute as the Government posits. The Government identifies no other provision in the U. S. Code

that prohibits bribes and gratuities in the same provision. And §201 does not do so. That is because bribery and gratuities are "two separate crimes" with "two different sets of elements." *United States* v. *Sun-Diamond Growers of Cal.*, 526 U. S. 398, 404. Pp. 12–13.

(4) For federal officials, Congress has separated bribery and gratuities into two distinct provisions of §201 for good reason: The crimes receive different punishments that "reflect their relative seriousness." *Sun-Diamond*, 526 U. S., at 405. For example, accepting a bribe as a federal official is punishable by up to 15 years in prison, while accepting an illegal gratuity as a federal official is punishable by up to only 2 years. If the Government were correct that §666 also covered gratuities, Congress would have inexplicably authorized punishing gratuities to state and local officials five times more severely than gratuities to federal officials—10 years for state and local officials compared to 2 years for federal officials. The Government cannot explain why Congress would have created such substantial sentencing disparities. Pp. 13–14.

(5) Interpreting §666 as a gratuities statute would significantly infringe on bedrock federalism principles. Generally, States have the "prerogative to regulate the permissible scope of interactions between state officials and their constituents." *McDonnell* v. *United States*, 579 U. S. 550, 576. The differing approaches by the state and local governments reflect policy judgments about when gifts expressing appreciation to public officials for their past acts cross the line from the innocuous to the problematic. Those carefully calibrated policy decisions would be gutted if the Court were to accept the Government's interpretation of §666. Reading §666 to create a federal prohibition on gratuities would suddenly subject 19 million state and local officials to a new and different regulatory regime for gratuities. The Court should hesitate before concluding that Congress prohibited gratuities that state and local governments have allowed. After all, Congress does not lightly override state and local governments on such core matters of state and local governance. Pp. 14–15.

(6) The Government's interpretation of the statute would create traps for unwary state and local officials. *Sun-Diamond*, 526 U. S., at 411. The Government says that the statute would not cover "innocuous" or "obviously benign" gratuities, but the Government does not identify any remotely clear lines separating such a gratuity from a criminal gratuity. The Government simply opines that state and local officials may not accept wrongful gratuities. The Government's so-called guidance would leave state and local officials entirely at sea to guess about what gifts they are allowed to accept under federal law, with the threat of up to 10 years in federal prison if they happen to guess wrong. That is not how federal criminal law works. And the Court has re-

jected the view that it should construe a criminal statute on the assumption that the Government will use it responsibly. See *McDonnell*, 579 U. S., at 576. Pp. 15–18.

(b) Faced with the phalanx of difficulties with its interpretation of § 666, the Government's argument boils down to one main point—that § 666 uses the term "rewarded" as well as "influenced." The Government says that Congress would not have added the term "rewarded" to "influenced" in § 666 if the statute were meant to cover only bribes and not also gratuities. That argument is misconceived. Contrary to the premise of the Government's argument, bribery statutes sometimes use the term "reward." See, *e. g.,* 18 U. S. C. § 600; 33 U. S. C. § 447. Moreover, without the term "rewarded" in § 666, an official might try to defend against a bribery charge by saying that the payment was received only after the official act and therefore could not have "influenced" the act. By including the term "rewarded," Congress made clear that the timing of the agreement is the key, not the timing of payment. Although a gratuity or reward offered and accepted by a state or local official after the official act may be unethical or illegal under other federal, state, or local laws, the gratuity does not violate § 666. Pp. 18–19.

71 F. 4th 555, reversed and remanded.

KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, GORSUCH, and BARRETT, JJ., joined. GORSUCH, J., filed a concurring opinion, *post*, p. 20. JACKSON, J., filed a dissenting opinion, in which SOTOMAYOR and KAGAN, JJ., joined, *post*, p. 21.

*Lisa M. Blatt* argued the cause for petitioner. With her on the briefs were *Amy Mason Saharia*, *Sarah M. Harris*, *Aaron Z. Roper*, *Kari M. Lorentson*, and *Andréa E. Gambino*.

*Colleen E. Roh Sinzdak* argued the cause for the United States. With her on the brief were *Solicitor General Prelogar*, *Acting Assistant Attorney General Argentieri*, *Deputy Solicitor General Feigin*, and *Kevin J. Barber.**

———————

*Briefs of *amici curiae* urging reversal were filed for the American Center for Law and Justice by *Jay Alan Sekulow*, *Stuart J. Roth*, *Jordan A. Sekulow*, *Craig L. Parshall*, and *Laura B. Hernandez*; for the International Union of Operating Engineers, Local 150, AFL–CIO, by *Terence H. Campbell* and *Dale D. Pierson*; for the James Madison Center for Free Speech by *James Bopp, Jr.*; for the Laborers' International Union of North America by *Bruce R. Lerner* and *Leon Dayan*; for the National Associa-

JUSTICE KAVANAUGH delivered the opinion of the Court.

Section 666 of Title 18 makes it a crime for state and local officials to "corruptly" solicit, accept, or agree to accept "anything of value from any person, intending to be influenced or rewarded" for an official act. §666(a)(1)(B). That law prohibits state and local officials from accepting *bribes* that are promised or given before the official act. Those bribes are punishable by up to 10 years' imprisonment.

The question in this case is whether §666 also makes it a crime for state and local officials to accept *gratuities*—for example, gift cards, lunches, plaques, books, framed photos, or the like—that may be given as a token of appreciation after the official act. The answer is no. State and local governments often regulate the gifts that state and local officials may accept. Section 666 does not supplement those state and local rules by subjecting 19 million state and local officials to up to 10 years in federal prison for accepting even commonplace gratuities. Rather, §666 leaves it to state and local governments to regulate gratuities to state and local officials.

I

A

Federal and state law distinguish between two kinds of payments to public officials—bribes and gratuities. As a general matter, bribes are payments made or agreed to *before* an official act in order to influence the official with respect to that future official act. American law generally treats bribes as inherently corrupt and unlawful.

But the law's treatment of gratuities is more nuanced. Gratuities are typically payments made to an official *after* an official act as a token of appreciation. Some gratuities can

tion of Criminal Defense Lawyers by *Brent T. Murphy* and *Samir Deger-Sen*; for the Separation of Powers Clinic by *R. Trent McCotter*; and for the Washington Legal Foundation et al. by *Christopher D. Man* and *Abbe David Lowell*.

be problematic. Others are commonplace and might be innocuous. A family gives a holiday tip to the mail carrier. Parents send an end-of-year gift basket to their child's public school teacher. A college dean gives a college sweatshirt to a city council member who comes to speak at an event. A state legislator's neighbor drops off a bottle of wine to congratulate her for her work on a new law.

As those examples suggest, gratuities after the official act are not the same as bribes before the official act. After all, unlike gratuities, bribes can corrupt the official act—meaning that the official takes the act for private gain, not for the public good. That said, gratuities can sometimes also raise ethical and appearance concerns. For that reason, Congress, States, and local governments have long regulated gratuities to public officials.

Not surprisingly, different governments draw lines in different places. For example, some States allow public officials to accept gifts below certain threshold amounts. *E. g.,* Colo. Const., Art. XXIX, §3(6) (allowing gifts under $75); Kan. Stat. Ann. §46–237(a)(1) (2021) (allowing gifts under $40 per year); Mass. Gen. Laws, ch. 268A, §§3(b), (f), 23(b), (f) (2020) (allowing gifts under $50); W. Va. Code Ann. §61–5A–6(b) (Lexis 2020) (allowing "trivial" gifts that pose "no substantial risk of affecting official impartiality").

Some States bar accepting any gifts for specific activities, like certain speaking engagements. *E. g.,* Ark. Code Ann. §5–52–108 (2016). Some States make accepting gifts for official conduct a misdemeanor. *E. g.,* Del. Code Ann., Tit. 11, §1206 (Cum. Supp. 2022); W. Va. Code Ann. §61–5A–9(d). Other States make it a felony. *E. g.,* Ariz. Rev. Stat. Ann. §§38–505(A), 38–510(A)(1) (2019).

Many States make exceptions for certain gifts, such as gifts from friends or family, travel reimbursements, campaign contributions, and ceremonial gifts like honorary degrees and plaques. *E. g.,* Colo. Const., Art. XXIX, §3(3); Mass. Gen. Laws, ch. 268A, §§3(f), 23(f); N. Y. Legis. Law

Ann. §1–c(j) (West Cum. Supp. 2024); W. Va. Code Ann. §61–5A–6(b).

Like the States, the counties, cities, and towns of America take various approaches to regulating gratuities to their officials. Just within the State of Indiana, where the current case arose, some local governments set a gift limit of $50, or $100, or $200, or $300. *E. g.*, Butler, Ind., Code of Ordinances §30.27(G) (2019); Gary, Ind., Municipal Code §2–472(b)(1) (2021); Valparaiso, Ind., Code of Ordinances §36.05(B)(6) (2024); Noblesville, Ind., Code of Ordinances §36.05(B)(2) (2024).

Some prohibit gifts only from business entities currently doing business with the local government. *E. g.*, Carmel, Ind., Code of Ordinances §2–184(f)(3) (2024). Others restrict gifts from businesses bidding for government contracts. *E. g.*, Johnson County, Ind., Code of Ordinances §4–6–1–1 (2024).

With respect to gratuities to state and local officials, many of those officials are part-time and are allowed to hold outside employment. That reality can create complications for regulating gifts to those officials, and the rules often reflect that reality.

Meanwhile, Congress has established federal standards for federal officials. In 1962, Congress passed and President Kennedy signed into law 18 U. S. C. §201, which contains comprehensive prohibitions on bribes and gratuities to federal officials. See 76 Stat. 1119. As to gratuities, that statute imposes criminal penalties on federal officials who seek or accept "anything of value" for "any official act." 18 U. S. C. §201(c)(1)(B).

The U. S. Office of Government Ethics, or OGE, has implemented §201 and promulgated numerous gratuities rules and exceptions. See 5 CFR §2635.202(c) (2023). For example, OGE has stated that federal officials may accept gifts that are "motivated by a family relationship or personal friendship," not by the "position of the employee." §2635.204(b).

And OGE has also carved out exceptions for officials to accept gifts of $20 or less per occasion, awards and honorary degrees, refreshments at social events, and the like. See § 2635.204.

Importantly, because bribery can corrupt the official act, Congress treats bribery as a far more serious offense than gratuities. For example, if a federal official accepts a bribe, federal bribery law provides for a 15-year maximum prison sentence. See 18 U. S. C. § 201(b). By contrast, if a federal official accepts a prohibited gratuity, federal gratuities law sets a 2-year maximum prison sentence. See § 201(c).

B

In the 1970s and early 1980s, confusion emerged in the Courts of Appeals over whether the federal bribery and gratuities laws in § 201(b) and § 201(c) applied not only to federal officials but also to state and local officials. See *Salinas* v. *United States*, 522 U. S. 52, 58 (1997). In response, Congress passed and President Reagan signed a law now codified at 18 U. S. C. § 666. See 98 Stat. 2143.

As relevant here, § 666 originally extended the gratuities prohibition in § 201(c) to most state and local officials. See *Salinas*, 522 U. S., at 58; 18 U. S. C. § 666(b) (1982 ed., Supp. II).

But after only two years, Congress reversed course. In 1986, Congress amended § 666 and thereby avoided the law's "possible application to acceptable commercial and business practices." H. R. Rep. No. 99–797, p. 30 (1986); see 100 Stat. 3612–3613. As a result of its amendment in 1986, the text of § 666 for state and local officials now closely resembles the bribery provision for federal officials, § 201(b), rather than the gratuities provision for federal officials, § 201(c). As relevant here, § 666 makes it a crime for most state and local officials to "corruptly" solicit, accept, or agree to accept "anything of value" "intending to be influenced or rewarded in connection with" any official business or transaction worth $5,000 or more. §§ 666(a)(1)(B), (b). That crime carries a 10-year maximum prison sentence. § 666(a).

C

This case involves the former mayor of Portage, Indiana. Portage is a city in northwest Indiana with a population of about 38,000.

Like other States, Indiana criminalizes bribery committed by state and local officials. See Ind. Code § 35–44.1–1–2(a)(2) (2023). Indiana also prescribes civil penalties such as fines, reprimands, and disqualification from state employment if state officials accept gratuities in violation of the State's Code of Ethics. See Ind. Code § 4–2–6–12 (2021); 42 Ind. Admin. Code § 1–5–1 (2024).

But Indiana does not impose general criminal or civil prohibitions on local officials who accept gratuities, leaving such regulation to the local governments themselves. As relevant here, the City of Portage sets limits on the gifts that local officials can accept from contractors doing business with the City. See Portage, Ind., Municipal Code of Ordinances §§ 2–178(e)–(f) (2024).

In 2013, the City of Portage awarded two contracts to a local truck company, Great Lakes Peterbilt, to purchase trash trucks. In total, the City paid about $1.1 million for five trucks.

In 2014, Peterbilt cut a $13,000 check to James Snyder, who was the mayor of Portage (and had been at the time of the contracts). The FBI and federal prosecutors suspected that the payment was a gratuity for the City's trash truck contracts. But Snyder said that he had also agreed to be a contractor for Peterbilt, providing consulting services. (Like many jurisdictions around the country, neither Indiana nor Portage apparently prohibited local officials from obtaining outside employment.) Snyder said that the payment was for his consulting services.

Snyder has never been charged by state prosecutors for bribery. And he has never been charged or disciplined by Portage for violating the City's gift rules. The Federal Government charged and a federal jury convicted Snyder of accepting an illegal gratuity (the $13,000 check from Peter-

bilt) in violation of 18 U. S. C. §666(a)(1)(B). The Government asked for about a 4- to 5-year prison sentence. The District Court sentenced Snyder to 1 year and 9 months in prison. App. to Pet. for Cert. 47a.

On appeal, Snyder argued that §666 criminalizes only bribes, not gratuities. The U. S. Court of Appeals for the Seventh Circuit disagreed based on that court's precedent interpreting §666 to cover both bribes and gratuities. 71 F. 4th 555, 578–580 (2023). So the Court of Appeals affirmed the conviction.

In light of a split in the Courts of Appeals over whether §666 criminalizes gratuities as well as bribes, this Court granted certiorari. 601 U. S. ——— (2023). Compare *United States* v. *Hamilton*, 46 F. 4th 389, 397 (CA5 2022); *United States* v. *Fernandez*, 722 F. 3d 1, 26 (CA1 2013), with *United States* v. *Abbey*, 560 F. 3d 513, 520 (CA6 2009); *United States* v. *Zimmermann*, 509 F. 3d 920, 927 (CA8 2007); *United States* v. *Agostino*, 132 F. 3d 1183, 1190 (CA7 1997); *United States* v. *Bonito*, 57 F. 3d 167, 171 (CA2 1995).

## II

### A

The question in this case is whether 18 U. S. C. §666(a)(1)(B) makes it a federal crime for state and local officials to accept gratuities for their past official acts. The answer is no. Six reasons, taken together, lead us to conclude that §666 is a bribery statute and not a gratuities statute—text, statutory history, statutory structure, statutory punishments, federalism, and fair notice.

*First* is the text of §666. Section 666(a)(1)(B) makes it a crime for state and local officials to "corruptly" accept a payment "intending to be influenced or rewarded" for an official act.[1] Congress modeled the text of §666(a)(1)(B) for state

---

[1] Section 666(a)(1)(B) provides:

"Whoever . . . being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof [that receives more than

and local officials on §201(b), the bribery provision for federal officials. Section 201(b) similarly makes it a crime for federal officials to "corruptly" accept a payment "in return for" "being influenced" in an official act.[2] By contrast, §666 bears little resemblance to §201(c), the gratuities provision for federal officials, which contains no express *mens rea* requirements and simply makes it a crime for federal officials to accept a payment "for or because of any official act."[3]

Therefore, the dividing line between §201(b)'s bribery provision and §201(c)'s gratuities provision is that bribery requires that the official have a corrupt state of mind and accept (or agree to accept) the payment intending to be influenced in the official act. See *United States* v. *Sun-*

_____

$10,000 in federal funds annually] corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; . . . shall be fined under this title, imprisoned not more than 10 years, or both."

[2] Section 201(b)(2)(A) provides:

"Whoever . . . being a public official or person selected to be a public official, directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for: being influenced in the performance of any official act; . . . shall be fined under this title or not more than three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States."

[3] Section 201(c)(1)(B) provides:

"Whoever otherwise than as provided by law for the proper discharge of official duty . . . being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of any official act performed or to be performed by such official or person . . . shall be fined under this title or imprisoned for not more than two years, or both."

*Diamond Growers of Cal.*, 526 U. S. 398, 404–405 (1999).
Section 666 shares the defining characteristics of § 201(b)'s
bribery provision: the corrupt state of mind and the intent
to be influenced in the official act.   The statutory text there-
fore strongly suggests that § 666—like § 201(b)—is a bribery
statute, not a gratuities statute.

   *Second* is the statutory history, which reinforces that tex-
tual analysis.   In 1984, when first enacting § 666 for state
and local officials, Congress borrowed language from the gra-
tuities statute for federal officials, § 201(c).   See 18 U. S. C.
§ 666(b) (1982 ed., Supp. II).   But just two years later, in
1986, Congress overhauled § 666, eliminated the gratuities
language, and instead enacted the current language that re-
sembles the bribery provision for federal officials, § 201(b).
Perhaps Congress in 1986 concluded that federally criminal-
izing state and local gratuities would significantly intrude on
federalism.   Whatever the impetus, we know that Congress
decided in 1986 to change the law and to model § 666 on
§ 201(b), the bribery statute, and not on § 201(c), the gratui-
ties statute.   It therefore would be strange to interpret
§ 666, as the Government suggests, to mean the same thing
now that it meant back in 1984, before the 1986 amendment.
We must respect Congress's choice in 1986.

   *Third* is the statutory structure.   The Government posits
that Congress prohibited bribes and gratuities to state and
local officials in a single statutory provision, § 666(a)(1)(B).
Such a statute would be highly unusual, if not unique.   The
Government identifies no other provision in the U. S. Code
that prohibits bribes and gratuities in the same provision.[4]

_____

   [4] At most, the Government points to 18 U. S. C. § 215(a)(2), which bars
employees of financial institutions from "corruptly" soliciting or accepting
"anything of value . . . intending to be influenced or rewarded in connec-
tion with any business or transaction of such institution."   That language
simply mirrors § 666's language.   But because this Court has never inter-
preted § 215 (and therefore has never said whether § 215 covers only brib-
ery), that statute is a null data point.

That is because bribery and gratuities are "two separate crimes" with "two different sets of elements." *Sun-Diamond*, 526 U. S., at 404. Therefore, §201(b) makes it a crime for federal officials to accept bribes, while a separate provision, §201(c), makes it a crime for federal officials to accept certain gratuities. The absence of a separate gratuities provision in §666 reinforces that §666 is a bribery statute for state and local officials, not a two-for-one bribery-and-gratuities statute.

*Fourth* are the statutory punishments. For federal officials, Congress has separated bribery and gratuities into two distinct provisions of §201 for good reason: The crimes receive different punishments that "reflect their relative seriousness." *Sun-Diamond*, 526 U. S., at 405. For example, accepting a bribe as a federal official is punishable by up to 15 years in prison, while accepting an illegal gratuity as a federal official is punishable by only up to 2 years. Compare §201(b) with §201(c).

If the Government were correct that §666 also covered gratuities, Congress would have created an entirely inexplicable regime for state and local officials. For one, even though bribery has been treated as a far more serious offense, Congress would have authorized the same 10-year maximum sentences for (i) gratuities to state and local officials and (ii) bribes to state and local officials. See *Sun-Diamond*, 526 U. S., at 405. In addition, Congress would have authorized punishing gratuities to state and local officials five times more severely than gratuities to federal officials—10 years for state and local officials compared to 2 years for federal officials.

The Government cannot explain why Congress would have created such substantial sentencing disparities. We cannot readily assume that Congress authorized a 2-year sentence for, say, a Cabinet Secretary who accepts an unlawful gratuity while authorizing a 10-year sentence on a local school board member who accepts an identical gratuity. What

sense would that make? In short, the inexplicable anomalies ushered in by the Government's approach powerfully demonstrate that § 666 is a bribery statute.

*Fifth* is federalism. Interpreting § 666 as a gratuities statute would significantly infringe on bedrock federalism principles. As this Court has long recognized, a State "defines itself as a sovereign through the structure of its government, and the character of those who exercise government authority." *McDonnell* v. *United States*, 579 U. S. 550, 576 (2016) (quotation marks omitted). Therefore, as a general matter, States have the "prerogative to regulate the permissible scope of interactions between state officials and their constituents." *Ibid.*; see *United States* v. *Bass*, 404 U. S. 336, 350 (1971).

As noted above, state and local governments have adopted a variety of approaches to regulating state and local officials' acceptance of gratuities. See *supra*, at 6–7. Those differing approaches reflect nuanced state and local policy judgments about when gifts expressing appreciation to public officials for their past acts cross the line from the innocuous to the problematic.

The carefully calibrated policy decisions that the States and local governments have made about gratuities would be gutted if we were to accept the Government's interpretation of § 666. After all, § 666 covers virtually all state and local officials—about 19 million nationwide. So reading § 666 to create a federal prohibition on gratuities would suddenly subject 19 million state and local officials to a new and different regulatory regime for gratuities. In other words, a county official could meticulously comply with her county's local gratuities rules—say, by declining a $200 gift card but accepting a $100 gift card from a neighbor as thanks for her diligent work on a new park—but still face up to 10 years in federal prison because she accepted a thing of value in connection with an official act.

We should hesitate before concluding that Congress prohibited gratuities that state and local governments have allowed for their officials.   After all, Congress does not lightly override state and local governments on such core matters of state and local governance.   And the principle articulated by this Court in *Sun-Diamond* fits this case as well: A "narrow, rather than a sweeping, prohibition is more compatible with the fact that" this statute "is merely one strand of an intricate web of regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials."   526 U. S., at 409.

In short, federalism principles weigh heavily in favor of reading § 666 as a bribery statute and not as a gratuities law.

*Sixth* is fair notice.   The Government's interpretation of the statute would create traps for unwary state and local officials.   *Sun-Diamond*, 526 U. S., at 411.

The Government had to choose between two options for how to read § 666.   The Government could read § 666 to ban all gratuities, no matter how trivial, in connection with covered official acts.   That option might be clear enough.   But that draconian approach would border on the absurd and exacerbate the already serious federalism problems with the Government's reading of § 666.

Alternatively, the Government could recognize the irrationality of reading § 666 to criminalize all such gratuities. And to deal with the overbreadth problems, the Government could make atextual exceptions on the fly.

The Government opted for the second approach, seeking to soothe concerns about overbreadth by saying that the statute, even under its view, would not cover "innocuous" or "obviously benign" gratuities.   Brief for United States 39; Tr. of Oral Arg. 41, 45–49.

But that effort to address those overbreadth concerns has simply moved the Government from one sinkhole to another. The flaw in the Government's approach—and it is a very seri-

ous real-world problem—is that the Government does not identify any remotely clear lines separating an innocuous or obviously benign gratuity from a criminal gratuity. The Government simply opines that state and local officials may not accept "wrongful" gratuities. Brief for United States 39; Tr. of Oral Arg. 46.

That is no guidance at all. Is a $100 Dunkin' Donuts gift card for a trash collector wrongful? What about a $200 Nike gift card for a county commissioner who voted to fund new school athletic facilities? Could students take their college professor out to Chipotle for an end-of-term celebration? And if so, would it somehow become criminal to take the professor for a steak dinner? Or to treat her to a Hoosiers game?

The Government offers no clear federal rules for state and local officials. So how are state legislators, city council members, school board officials, building code inspectors, probation officers, human resource directors, police officers, librarians, snow plow drivers, court clerks, prison guards, high school basketball coaches, mayors, zoning board members, animal control officers, social workers, firefighters, city planners, and the entire army of 19 million state and local officials to know what is acceptable and what is criminalized by the Federal Government? They cannot. The Government's so-called guidance would leave state and local officials entirely at sea to guess about what gifts they are allowed to accept under federal law, with the threat of up to 10 years in federal prison if they happen to guess wrong. That is not how federal criminal law works.[5]

———————

[5] The Government's interpretation seems all the more unbelievable because § 666 applies to the gift-givers as well as the state and local officials accepting the gifts. Specifically, § 666(a)(2) makes it a crime punishable by 10 years' imprisonment for someone to "corruptly" offer or give "anything of value" to state and local officials "with intent to influence or reward." So under the Government's approach, families, students, constituents, and other members of the public would be forced to guess whether they could even offer (much less actually give) thank-you gift cards, steak

Opinion of the Court

Responding to the legitimate concern that the federal lines are unknown and unknowable to state and local officials, the Government advances the familiar plea that federal prosecutors can be trusted not to enforce this statute against small-time violators. But as this Court has said time and again, the Court "cannot construe a criminal statute on the assumption that the Government will use it responsibly." *McDonnell*, 579 U. S., at 576 (quotation marks omitted); see *Percoco* v. *United States*, 598 U. S. 319 (2023); *Ciminelli* v. *United States*, 598 U. S. 306 (2023); *Kelly* v. *United States*, 590 U. S. 391 (2020); *Skilling* v. *United States*, 561 U. S. 358 (2010).

The lack of fair notice for state and local officials is highlighted by comparing the non-existent federal gratuities guidance given to state and local officials with the extensive federal gratuities guidance given to federal workers. The Office of Government Ethics has promulgated comprehensive and detailed regulatory guidelines specifying what gifts are allowed and prohibited for federal workers. For instance, the guidelines for federal officials set forth cost thresholds, exempt certain gifts from friends or family, clarify what discounts are acceptable, and explain which social invitations an official may accept—all with multiple examples to guide federal officials' conduct. See 5 CFR § 2635.204.

Nothing for state and local officials. It is unfathomable that Congress would authorize a 10-year criminal sentence for gifts to 19 million state and local officials without any coherent federal guidance (or any federal guidance at all) about how an official can distinguish the innocuous from the criminal.

When construing a statute like this that regulates state and local officials, this Court's precedents caution against leaving the statute's "outer boundaries ambiguous" and involving the "Federal Government in setting standards of good government for local and state officials." *McDonnell*,

───────────

dinners, or Fever tickets to their garbage collectors, professors, or school board members, for example.

579 U. S., at 577 (quotation marks omitted). And the Court has emphasized that a "statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter." *Sun-Diamond*, 526 U. S., at 412. So it is here.

B

Faced with that phalanx of difficulties with its interpretation of § 666, the Government offers little. The Government's argument boils down to one main point—that § 666 uses the term "rewarded" as well as "influenced." And that, too, is the dissent's main point. The Government (echoed by the dissent) says that Congress would not have added the term "rewarded" to "influenced" in § 666 if the statute were meant to cover only bribes and not also gratuities. That argument is misconceived.

In isolation, the word "rewarded" could be part of a gratuities statute or a bribery statute—either (i) a reward given after the act with no agreement beforehand (gratuity) or (ii) a reward given after the act pursuant to an agreement beforehand (bribe). But as noted above, the word "corruptly" in the text of § 666 helps resolve the issue here. The bribery statute for federal officials, § 201(b), uses the term "corruptly." But the gratuities statute for federal officials, § 201(c), does not. The term "corruptly" therefore signals that § 666 is a bribery statute. And statutory history, statutory structure, statutory punishments, federalism, and fair notice strongly reinforce that textual signal and together establish that § 666 is a bribery statute.

Contrary to the premise of the Government's argument, moreover, bribery statutes sometimes use the term "reward." See, *e. g.*, 18 U. S. C. § 600; 33 U. S. C. § 447. The term "rewarded" closes off certain defenses that otherwise might be raised in bribery cases. Consider a bribe where the agreement was made before the act but the payment was made after the act. An official might try to defend against

the bribery charge by saying that the payment was received only after the official act and therefore could not have "influenced" the act. By including the term "rewarded," Congress made clear that the timing of the agreement is the key, not the timing of the payment, and thereby precluded such a potential defense.

And think about the official who took a bribe before the official act but asserts as a defense that he would have taken the same act anyway and therefore was not "influenced" by the payment. To shut the door on that potential defense to a §666 bribery charge, Congress sensibly added the term "rewarded."

So even if "influenced" alone might have covered the waterfront of bribes, adding "rewarded" made good sense to avoid potential ambiguities, gaps, or loopholes. Congress commonly writes federal statutes, including bribery statutes, in such a belt and suspenders manner. Here, the term "rewarded" does not transform §666 into a gratuities statute.

In sum, §666 tracks §201(b), the bribery provision for federal officials. A state or local official can violate §666 when he accepts an up-front payment for a future official act or agrees to a future reward for a future official act. See *United States* v. *Fernandez*, 722 F. 3d 1, 23 (CA1 2013) (the word "reward" "clarifies that a bribe can be promised before, but paid after, the official's action" (quotation marks omitted)). But a state or local official does not violate §666 if the official has taken the official act before any reward is agreed to, much less given. Although a gratuity offered and accepted after the official act may be unethical or illegal under other federal, state, or local laws, the gratuity does not violate §666.

\*          \*          \*

The Government asks this Court to adopt an interpretation of §666 that would radically upend gratuities rules and turn §666 into a vague and unfair trap for 19 million state and local officials. We decline to do so. Section 666 is a

vital statute, but its focus is targeted: Section 666 proscribes bribes to state and local officials, while allowing state and local governments to regulate gratuities to state and local officials. Within constitutional bounds, Congress can always change the law if it wishes to do so. But since 1986, it has not, presumably because Congress understands that state and local governments may and often do regulate gratuities to state and local officials. We reverse the judgment of the U. S. Court of Appeals for the Seventh Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE GORSUCH, concurring.

Call it what you will. The Court today speaks of inferences from the word "corruptly," the statute's history and structure, and associated punishments. See *ante*, at 10. It discusses concerns of fair notice and federalism. *Ibid.* But the bottom line is that, for all those reasons, any fair reader of this statute would be left with a reasonable doubt about whether it covers the defendant's charged conduct. And when that happens, judges are bound by the ancient rule of lenity to decide the case as the Court does today, not for the prosecutor but for the presumptively free individual. See *United States* v. *Davis*, 588 U. S. 445, 464–465 (2019).

Lenity may sometimes, as it does today, go unnamed. It may be deployed under other guises, too. "Fair notice" or "fair warning" are especially familiar masks. See, *e. g.*, *ante*, at 10, 15, 17; *Marinello* v. *United States*, 584 U. S. 1, 6–7, 9–10 (2018); *McDonnell* v. *United States*, 579 U. S. 550, 576 (2016). Cf. *Wooden* v. *United States*, 595 U. S. 360, 389 (2022) (GORSUCH, J., concurring in judgment) ("Lenity works to enforce the fair notice requirement"); *Yates* v. *United States*, 574 U. S. 528, 548 (2015) (plurality opinion) (same). Other times, we clothe lenity in its corollary—that courts

JACKSON, J., dissenting

cannot "rely upon prosecutorial discretion to narrow the" scope of an "otherwise wide-ranging" criminal law. *Marinello*, 584 U. S., at 11; see, *e. g.*, *ante*, at 17; *Dubin* v. *United States*, 599 U. S. 110, 131 (2023). And in still other instances, we do much the same when we speak of the "restraint" necessary "in assessing the reach of a federal criminal statute." *Id.*, at 129 (internal quotation marks omitted); accord, *Marinello*, 584 U. S., at 6–7, 11; *Arthur Andersen LLP* v. *United States*, 544 U. S. 696, 703 (2005).

But make no mistake: Whatever the label, lenity is what's at work behind today's decision, just as it is in so many others. Rightly so. I am pleased to join.

JUSTICE JACKSON, with whom JUSTICE SOTOMAYOR and JUSTICE KAGAN join, dissenting.

Officials who use their public positions for private gain threaten the integrity of our most important institutions. Greed makes governments—at every level—less responsive, less efficient, and less trustworthy from the perspective of the communities they serve. Perhaps realizing this, Congress used "expansive, unqualified language" in 18 U. S. C. § 666 to criminalize graft involving state, local, and tribal entities, as well as other organizations receiving federal funds. *Salinas* v. *United States*, 522 U. S. 52, 56 (1997). Section 666 imposes federal criminal penalties on agents of those entities who "corruptly" solicit, accept, or agree to accept payments "intending to be influenced or rewarded." § 666(a)(1)(B).

Today's case involves one such person. James Snyder, a former Indiana mayor, was convicted by a jury of violating § 666 after he steered more than $1 million in city contracts to a local truck dealership, which turned around and cut him a $13,000 check. He asks us to decide whether the language of § 666 criminalizes both bribes and gratuities, or just bribes. And he says the answer matters because bribes re-

quire an upfront *agreement* to take official actions for pay-
ment, and he never agreed beforehand to be paid the $13,000
from the dealership.

Snyder's absurd and atextual reading of the statute is one
only today's Court could love. Ignoring the plain text of
§ 666—which, again, expressly targets officials who "cor-
ruptly" solicit, accept, or agree to accept payments "intend-
ing to be influenced *or rewarded*"—the Court concludes that
the statute does not criminalize gratuities at all. This is
so, apparently, because "[s]tate and local governments often
regulate the gifts that state and local officials may accept,"
*ante*, at 5, which, according to the majority, means that
§ 666 cannot.

The Court's reasoning elevates nonexistent federalism con-
cerns over the plain text of this statute and is a quintes-
sential example of the tail wagging the dog. Section 666's
regulation of state, local, and tribal governments reflects
Congress's express choice to reach those and other entities
receiving federal funds. And Congress not only had good
reasons for doing so, it also had the authority to take such
legislative action, as this Court has already recognized. See
*Sabri* v. *United States*, 541 U. S. 600, 605, 608 (2004). We
have long held that when Congress has appropriated federal
money, it "does not have to sit by and accept the risk of
operations thwarted by local and state improbity." *Id.*, at
605.

Both the majority and Snyder suggest that interpreting
§ 666 to cover gratuities is problematic because it gives "fed-
eral prosecutors unwarranted power to allege crimes that
*should* be handled at the State level." App. 14–15 (emphasis
added); see also *ante*, at 14–15. But woulds, coulds, and
shoulds of this nature must be addressed across the street
with Congress, not in the pages of the U. S. Reports. We
have previously and wisely declined "to express [a] view as
to [§ 666's] soundness as a policy matter." *Sabri*, 541 U. S.,
at 608, n. But, today, the Court can stay silent no longer.
Its decision overrides the intent of Congress—and the policy

preferences of the constituents that body represents—as unequivocally expressed by the plain text of the statute. Respectfully, I dissent.

I

Section 666 is a relatively recent solution to an old problem. It seeks to ensure that "taxpayer dollars . . . are in fact spent for the general welfare, and not frittered away in graft." *Id.*, at 605. Accordingly, the statute applies to certain entities that receive a threshold amount of federal funds. It covers any "agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof." § 666(a)(1). The entity must "receiv[e], in any one year period, benefits in excess of $10,000 under a Federal program involving a . . . form of Federal assistance." § 666(b).

If an entity meets that description, the statute imposes federal criminal penalties on any agent who

> "corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more." § 666(a)(1)(B).

In short, § 666(a)(1)(B) makes it a federal crime for state, local, or tribal officials to corruptly solicit, accept, or agree to accept certain payments in connection with business worth $5,000 or more. A neighboring provision similarly imposes penalties on the giver—*i. e.*, anyone who "corruptly gives, offers, or agrees to give" payments "with intent to influence or reward" these officials. § 666(a)(2). For offenders of either provision, the penalty is a fine, a maximum of 10 years in prison, or both. § 666(a).

There is no dispute that § 666 criminalizes bribes. See *ante,* at 5. This Court has also been clear about what a bribe requires: "a *quid pro quo.*" *United States* v. *Sun-Diamond Growers of Cal.*, 526 U. S. 398, 404 (1999). A *quid*

*pro quo* means "a specific intent to give or receive something of value *in exchange* for an official act." *Id.*, at 404–405. So, for a payment to constitute a bribe, there must be an upfront agreement to exchange the payment for taking an official action. See *ibid.*

Legislatures have also considered it similarly wrongful for government officials to accept gratuities under certain circumstances, but unlike bribes, gratuities do not have a *quid pro quo* requirement. Generally speaking, rather than an actual agreement to take payment as the impetus for engaging in an official act (a *quid pro quo* exchange), gratuities "may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken." *Id.*, at 405.

We took this case to resolve "[w]hether section 666 criminalizes gratuities, *i. e.*, payments in recognition of actions the official has already taken or committed to take, without any quid pro quo agreement to take those actions." Pet. for Cert. I. The majority today answers no, when the answer to that question should be an unequivocal yes.

## II

### A

To reach the right conclusion we need not march through various auxiliary analyses: We can begin—and end—with only the text. See *National Assn. of Mfrs.* v. *Department of Defense*, 583 U. S. 109, 127 (2018). We "understan[d] that Congress says in a statute what it means and means in a statute what it says there." *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*, 530 U. S. 1, 6 (2000) (internal quotation marks omitted).

### 1

By its plain terms, §666 imposes criminal penalties on state, local, and tribal officials who "corruptly" solicit, accept, or agree to accept "anything of value from any person, in-

tending to be influenced or rewarded." §666(a)(1)(B). Use of the term "influenced" captures *quid pro quo* bargains struck before an official act is taken—and therefore bribes— as everyone agrees. Brief for Petitioner 17; Brief for United States 21; cf. *Sun-Diamond*, 526 U. S., at 404–405. The term "rewarded" easily covers the concept of gratuities paid to corrupt officials after the fact—no upfront agreement necessary.

As a general matter (and setting aside for the moment that §666 covers only officials who act "corruptly"), everyone knows what a reward is. It is a $20 bill pulled from a lost wallet at the time of its return to its grateful owner. A surprise ice cream outing after a report card with straight As. The bar tab picked up by a supervisor celebrating a job well done by her team. A reward often says "thank you" or "good job," rather than "please."

Dictionary definitions confirm what common sense tells us about what it means to be rewarded. A "reward" is "[t]hat which is given in return for good or evil done or received," including "that which is offered or given for some service or attainment." 3 Webster's New International Dictionary 2136 (2d ed. 1957). The verb form of the word is no different. To "reward" means "to . . . recompense." *Ibid.* (defining "to reward" as "[t]o make a return, or give a reward, to (a person) or for (a service, etc.); to requite; recompense; repay"). Both definitions thus encompass payment in recognition of an action that an official has already taken or committed to taking. And neither requires there to be some beforehand agreement about that exchange, *i. e.*, a *quid pro quo*.

Snyder concedes that the term "rewarded" can encompass the concept of gratuities. See Tr. of Oral Arg. 5; see also Reply Brief 3 (quoting *Sun-Diamond*, 526 U. S., at 405). The majority—which doesn't bother to interpret "rewarded" until the end of its opinion—eventually admits the same. See *ante*, at 18 ("[T]he word 'rewarded' could be part of a gratuities statute"). By that point in its analysis, however,

the majority has already characterized § 666 as a bribery
statute. And then, because we typically seek to give effect
to each word of a statute, see *TRW Inc.* v. *Andrews*, 534 U. S.
19, 31 (2001), the majority must strain to make the word
"rewarded" as it appears in § 666 relevant, rather than mean-
ingless. It offers rank speculation as to why "rewarded" in
§ 666 might mean something other than what it ordinarily
does, ultimately assigning the word some busy work relating
to potential defenses to bribery charges. See *ante*, at 18–
19. But whatever the merits of the majority's assertions
involving waterfronts, belts, and suspenders, its interpreta-
tion of § 666 finds little grounding in the actual text of the
statute. See *Luna Perez* v. *Sturgis Public Schools*, 598
U. S. 142, 150 (2023) ("'[W]e cannot replace the actual text
with speculation as to Congress' intent'").

2

Speaking of text: The language of other statutes demon-
strates that Congress uses the word "reward" when it wants
to criminalize gratuities. For example, in 18 U. S. C. § 1912,
Congress imposed criminal penalties on any federal officer
"engaged in inspection of vessels" who "receives any fee or
*reward* for his services, except what is allowed to him by
law." (Emphasis added.) And in 22 U. S. C. § 4202, Con-
gress provided for the sanctioning of "any consular offi-
cer . . . who demands or receives for any official services . . .
any fee or *reward* other than the fee provided by law for
such service." (Emphasis added.) Snyder admits that
these statutes target gratuities by virtue of Congress's use
of the term "reward." Brief for Petitioner 31.

But rather than simply calling a statute that penalizes ac-
cepting a "reward" for public business what it is—a wrongful
or illegal gratuities statute—the majority insists that, some-
times, when Congress uses "reward," it is still just criminal-
izing *quid pro quo* bribery, mustering up examples to show
that "bribery statutes sometimes use the term 'reward.'"

*Ante*, at 18.    However, none of the majority's examples use the term "reward" in a way that is relevantly similar to § 666. For one thing, the majority's examples do not use the phrase "influenced or rewarded" to delineate between bribes and gratuities, while covering both, as § 666 does.    In addition, each of the statutes the majority points to explicitly links the forbidden "reward" to an agreement to take some specific action; in other words, the majority's examples specify, by their plain text, a *quid pro quo*.    For example, 18 U. S. C. § 600 imposes federal criminal penalties on anyone who "promises," *inter alia*, jobs or benefits "provided for or made possible in whole or in part by any Act of Congress" to another person "as consideration, favor, or reward for" certain political activity.    That statute identifies both a forbidden *quid* (a future job) and *quo* (political activity).[1]

In contrast with those statutes, when § 666 uses "rewarded," it never connects that term to some upfront exchange.    What the majority's examples actually show, then, is that when Congress wants to use the term "reward" to encompass only bribes, it knows just how to do so.    See *Henson* v. *Santander Consumer USA Inc.*, 582 U. S. 79, 86 (2017) ("[W]e presume differences in language like this convey differences in meaning").

B

In an attempt to shore up its unnatural reading of § 666, the majority turns to statutory and legislative history. *Ante*, at 8, 12.    Where appropriate, I, too, find statutory and legislative history to be useful tools that this Court can and should consult.    See, *e. g.*, *Delaware* v. *Pennsylvania*, 598 U. S. 115, 138–139 (2023).    But resort to these tools is questionable under certain circumstances.    See *Milner* v.

---

[1] See also 33 U. S. C. § 447 (imposing penalties on "[e]very person who . . . gives any sum of money or other bribe, present, or reward . . . to any . . . employee of the office of any supervisor of a harbor with intent to influence such . . . employee to permit or overlook any violation of the provisions of this subchapter").

*Department of Navy*, 562 U. S. 562, 574 (2011) ("When presented, on the one hand, with clear statutory language and, on the other, with dueling committee reports, we must choose the language"). In any event, here, the statutory and legislative history only make matters worse for the majority's analysis.

Section 666 traces its lineage to 18 U. S. C. § 201, though the kinship is more attenuated than the majority lets on. Section 201 indeed "contains comprehensive prohibitions on bribes and gratuities to federal officials." *Ante*, at 7–8 (discussing §§ 201(b)–(c)). But initially, it was not entirely clear *which* officials that federal statute covered. By its terms, § 201 applies broadly to "public officials," see § 201(a), and confusion arose among some lower courts as to "whether state and local employees could be considered 'public officials'" under the statute. *Salinas*, 522 U. S., at 58. Without awaiting our resolution of the issue, Congress enacted § 666 in 1984. *Ibid.*; see also 98 Stat. 2143.

In § 666, Congress expressly sought to reach state and local officials "to protect the integrity of the vast sums of money distributed through Federal programs." S. Rep. No. 98–225, p. 370 (1983). As originally enacted, § 666 barred those officials from soliciting, accepting, or agreeing to accept "anything of value . . . for or because of the recipient's conduct," § 666(b) (1982 ed., Supp. II), using language similar to that in § 201(c), the federal-official gratuities provision. Crucially, no one disputes that when it was initially enacted, § 666 prohibited *both bribes and gratuities*. *Ante*, at 8. Similarly significant (though unmentioned by the majority), Congress imposed the same 10-year maximum term of imprisonment for a violation then as it does now. See § 666(b) (1982 ed., Supp. II); cf. *ante*, at 17 (describing it as "unfathomable that Congress would authorize a 10-year criminal sentence for gifts to 19 million state and local officials" without federal guidance).

Starting with this historical disadvantage regarding the scope of the statute, the majority must show that Congress made major changes to §666 that might account for the sans-gratuity interpretation the majority adopts today.   But several features of the statutory and legislative history convince me of the opposite.

For one, Congress said that it was *not* making major changes to the statute.   The 1986 revisions to §666 were part of a package of changes that Congress specifically deemed "technical and minor."   H. R. Rep. No. 99–797, p. 16 (1986); see also Criminal Law and Procedure Technical Amendments Act of 1986, 100 Stat. 3592.   And the revisions themselves are largely in keeping with this characterization. Relevant here, Congress teased out a "corruptly" *mens rea* requirement and swapped the previous "for or because of" language for the current "intending to be influenced or rewarded" phrasing.   *Id.*, at 3613.   None of this, on its face, evinces clear congressional intent to extract an entire category of previously covered illicit payments from §666.

Undeterred, the majority says that when Congress amended §666, it was attempting to fashion that provision after §201(b)—the bribery statute that covers federal officials.   See *ante*, at 12.[2]   Again, the statutory and legislative record suggests otherwise: In fact, history establishes that Congress had a different model statute in mind.

Congress had used a phrase identical to §666's "intending to be influenced or rewarded" language just a few months before when it amended 18 U. S. C. §215, an anticorruption statute that applies to bank employees.   See 100 Stat. 779. That provision imposes criminal penalties on any bank employee who "corruptly solicits or demands . . . or corruptly

---

[2] Section 201(b)(2)(A) imposes federal criminal penalties on "[w]hoever . . . being a public official . . . corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value . . . in return for . . . being influenced in the performance of any official act."

accepts or agrees to accept, anything of value from any person, *intending to be influenced or rewarded* in connection with any business or transaction." *Ibid.* (emphasis added); see also § 215(a)(2). And this similarity was no coincidence. The House Report the majority quotes as explicating § 666 confirms that § 666 *was meant to track § 215*—not § 201(b), as the majority claims. See H. R. Rep. No. 99–797, at 30, n. 9.

This means, of course, that if § 215 criminalizes gratuities, it is likely § 666 does as well. But the majority labels § 215 "a null data point," evidently because this Court has never interpreted that statute. *Ante*, at 12, n. 4. Section 215's relevance to § 666 does not come from any interpretation, however—it is plain on the face of that statute, which uses the exact same "influenced or rewarded" phrase. And the history of that model provision indicates that Congress meant for § 215 to reach gratuities, too. For example, a House Report directly speaks of § 215 as a statute criminalizing gratuities: It says that, before 1986, § 215 made "it criminal for a bank official to accept any *gratuity*, no matter how trivial, after that official ha[d] taken official action on bank business." H. R. Rep. No. 99–335, p. 6, n. 25 (1985) (emphasis added). Congress amended § 215 in 1986 to "narro[w]" the statute, but not by carving out gratuities altogether. *Ibid.* Rather it narrowed the "law by requiring that the acceptance of the *gratuity* be done *corruptly.*" *Ibid.* (emphasis added).[3] Astute readers will recall that Congress made exactly this same narrowing edit to § 666. See *supra*, at 29.

In short, Congress tailored § 215 in an effort to stem " 'corruption in the bank industry,' " and it seemed to think that *both* bribes *and* gratuities contributed to that problem.

---

[3] Piling on, I note that the 1986 amendments to § 215 also required federal agencies with responsibility for regulating a financial institution to "establish . . . guidelines" to help bank employees comply with the statute. See 18 U. S. C. § 215(d) (1982 ed., Supp. IV). When those agencies followed through, they too expressly assumed that § 215 covered gratuities. See, *e. g.*, 52 Fed. Reg. 46046 (1987); *id.*, at 43940.

H. R. Rep. No. 99–335, at 5.   So, too, with § 666 and public corruption.

## III

To recap what we know thus far: The question in this case is whether § 666 criminalizes gratuities in addition to bribes.   The text and purpose of § 666 alone provide an easy answer.   The word "rewarded" means to have been given a reward for some action taken.   So gratuities are plainly covered.   To be sure, if the Court had given that straightforward answer, we might eventually have confronted a followup question: Are *all* gratuities covered?   Said differently: Even if gratuities generally are criminalized by § 666, are there circumstances in which certain gratuities are *not* criminalized?

The case in front of us does not require us to reach that question.   We have not been asked to settle, once and for all, which gratuities are corrupt and which are quotidian. Snyder did not argue that his $13,000 check was part of some subset of noncriminalized gratuities.   Rather (and this is important to note), Snyder has taken an all-or-nothing approach to the argument he makes in this case.   He insists that *all* gratuities—every type in the entire class—are excluded from § 666.   Because the statute's plain text says otherwise, that should have been the end of this case, even if a future petitioner might have asked us to do a more nuanced analysis.

But, no matter—the majority today skips ahead, complaining that the Government has "not identif[ied] any remotely clear lines separating an innocuous or obviously benign gratuity from a criminal gratuity."   *Ante,* at 16.   This omission is a huge problem, the majority says, because without those lines, "19 million state and local officials" could be imprisoned "for accepting even commonplace gratuities."   *Ante,* at 5.

The majority's fretting falls flat, especially in the context of *this* case.   There is no question that state, local, and tribal officials deserve "clear lines," but we were not asked to pro-

vide all of them at this moment.[4]   And, perhaps even more
important, nothing about the facts of this case even remotely
implicates a reasonable concern about the criminalization of
innocuous conduct on the part of an unwary official.   Fur-
thermore, most of the clear lines the majority seeks already
exist—they come from the text of the statute.   Limits
within the text of §666 provide "fair notice" that common-
place gratuities are typically not within the statute's reach,
contra, *ante*, at 15, and they suffice to prevent prosecution of
the gift cards, burrito bowls, and steak dinners that derail
today's decision.[5]

A

   If one simply accepts what the statute says it covers—
local officials who corruptly solicit, accept, or agree to accept
rewards in connection with official business worth over a cer-
tain amount—Snyder's case is an easy one.   Perhaps that is
why the majority spends so little time describing it.
   Snyder took office as mayor of the city of Portage, Indiana,
in January 2012.   As mayor, Snyder and his appointees sat
on the Portage Board of Works and Public Safety, the entity
that managed public bidding on city contracts.   Snyder put
one of his friends, Randy Reeder, in charge of the bidding
process, despite Reeder's lack of experience in administering
public bids.   Evidence presented at Snyder's trial showed
that Reeder tailored bid specifications for two different city
contracts to favor Great Lakes Peterbilt, a truck dealership

---

   [4] Given the question presented, the majority's demand for a comprehen-
sive interpretation of §666, for all purposes, is both striking and inconsist-
ent with our usual incremental approach.   See *St. Amant* v. *Thompson*,
390 U. S. 727, 730–731 (1968) (observing that the "outer limits" of "many
legal standards"—whether they be "provided by the Constitution, stat-
utes, or case law"—are "marked out through case-by-case adjudication").

   [5] Notably, I am not the only Justice who has viewed §666 in this way.
See *Sorich* v. *United States*, 555 U. S. 1204, 1207 (2009) (Scalia, J., dissent-
ing from denial of certiorari) (describing §666(a) as providing a "clear
rul[e]" prohibiting "bribes and gratuities to public officials").

owned by brothers Robert Buha and Stephen Buha.  Evidence also showed that during the bidding process, Snyder was in contact with the Buha brothers, but no other bidders.

Snyder had campaigned on a platform that included automating trash collection, and by December 2012, the city was looking to buy three garbage trucks.  It issued an invitation to bid on the contract, listing specific requirements for the trucks.  Reeder testified that he crafted some specifications, including delivery within 150 days, knowing they would favor Great Lakes Peterbilt.  The board of works voted to award Great Lakes Peterbilt the contract.  Evidence at trial showed that the city could have saved about $60,000 had it not prioritized expedited delivery.

In January 2013, the manager of Great Lakes Peterbilt asked Reeder whether the city might want to buy another truck—an unused, 2012 model that had been sitting outside on the dealership's lot over two winters.  Snyder first tried to buy the truck outright, but Portage's city attorney informed him he had to go through the public bidding process.  So the board of works issued another invitation to bid in November 2013.  This invitation sought two more garbage trucks.  Reeder again tweaked certain specifications to favor Great Lakes Peterbilt—this time to help it move the older truck sitting on its lot.  The board of works voted to award Great Lakes Peterbilt this contract too.  Together, the two contracts that Great Lakes Peterbilt "won" totaled some $1.125 million.

Shortly after the second contract was awarded, Snyder paid the Buha brothers a visit at their dealership.  "I need money," he said.  App. 72.  He asked for $15,000; the dealership gave him $13,000.  When federal investigators heard about the payment and came calling, Snyder told them the check was for information technology and health insurance consulting services that he had provided to the dealership. He gave different explanations for the money to Reeder and a different city employee.

Employees at Great Lakes Peterbilt testified that Snyder never performed any consulting work for the dealership. And during the federal investigation, no written agreements, work product, evidence of meetings, invoices, or other documentation was ever produced relating to any consulting work performed by Snyder. All of this confirmed testimony from the dealership's controller, who had cut the check to Snyder: Snyder had instead been paid for an " 'inside track.' " App. to Pet. for Cert. 60a–61a.

A federal grand jury charged Snyder with violating 18 U. S. C. § 666(a)(1)(B). App. 2–3. The indictment alleged that Snyder "did corruptly solicit, demand, accept, and agree to accept a bank check in the amount of $13,000, intending to be influenced and rewarded." *Id.*, at 3. A jury found him guilty of violating § 666 in connection with the garbage truck contracts. It is not difficult to see why the jury reached that conclusion, having been instructed that the Government needed to prove that Snyder "acted corruptly, with the intent to be influenced or rewarded." *Id.*, at 27.[6]

B

One thing is clear from the Court's opinion in this case—the majority isn't much worried about what happens to Snyder under § 666. It pivots to the other 18,999,999 state, local, and tribal officials at work throughout the country and

---

[6] Even after its decision to construe § 666 as a bribery-only statute, the Court's decision to reverse Snyder's conviction, rather than vacate and remand, is perplexing. The District Court specifically found that, "even if" § 666 were construed to penalize bribes alone, "there was ample evidence permitting a rational jury to find, from the circumstantial evidence, that there was an up-front agreement to reward Snyder for making sure [Great Lakes Peterbilt] won the contract award(s)." App. to Pet. for Cert. 63a. Thus, the Seventh Circuit should have been permitted to assess in the first instance whether any instructional error was prejudicial. Under our current precedent, Snyder is not entitled to automatic relief due to a mere instructional error. See, *e. g.*, *Greer* v. *United States*, 593 U. S. 503, 507, 513 (2021).

laments that there are "no clear federal rules" for them. *Ante,* at 16. But § 666 was not designed to apply to teachers accepting fruit baskets, soccer coaches getting gift cards, or newspaper delivery guys who get a tip at Christmas. See *ibid.* (reciting similar examples). We know this because, beyond requiring acceptance of a reward, § 666 weaves together multiple other elements (that the Government must prove beyond a reasonable doubt), which collectively do the nuanced work of sifting illegal gratuities from inoffensive ones.

Those limits are clear on the face of the statute; when construed as a whole, the text of § 666 provides more than adequate notice to those this statute covers. Now, for a list of my own: *First*, § 666 applies only when a state, local, tribal, or private entity "receives, in any one year period, benefits in excess of $10,000 under a Federal program involving" some "form of Federal assistance." § 666(b). *Second*, the statute requires that the criminalized payment be "in connection with any business, transaction, or series of transactions" of the covered entity. §§ 666(a)(1)(B), (a)(2). *Third*, that "business, transaction, or series of transactions" must involve "[some]thing of value of $5,000 or more." *Ibid*. *Fourth*, § 666 expressly "does not apply to bona fide salary, wages, fees, or other compensation paid . . . in the usual course of business." § 666(c). Nor does it apply to "expenses paid or reimbursed . . . in the usual course of business." *Ibid.* *Last*, and perhaps most important, the statute specifically requires that the official who solicits, accepts, or agrees to accept the payment do so "corruptly" (the *mens rea*). § 666(a)(1)(B). This series of carefully delineated circumstances—all of which appear in the text of § 666—means that payments or gifts to officials will not always be captured by § 666 under any and all circumstances, but only if the violator acts in the ways described and with the required intent.

Notably, the majority takes the last statutory check I describe—the "corruptly" *mens rea* requirement—and trans-

forms it into a reason to read the statute to cover only
bribes. See *ante*, at 10–12, 18. The majority maintains that
"corruptly" signals that § 666 is a bribery statute because
§ 201(b), the federal-official bribery statute, uses that term.
*Ibid.* But, as I have already explained, the bribery statute
for federal officials is not the blueprint the majority makes it
out to be. See Part II–B, *supra.* And while the majority
suggests that "corruptly" just means *quid pro quo*, see *ante*, at
11–12, it can give no reason why that must be so in *this* statute.

Instead, the majority gives a practical justification for its
preferred interpretation. It suggests that if § 666 is read
generally to apply to gratuities, and "corruptly" is read as a
narrowing *mens rea* element, then the statute *still* might
sweep in all sorts of innocuous gifts. See *ante*, at 15–16.
Maybe. Maybe not. Again, the precise meaning of the
term "corruptly" is not the question before us today. Nor
does it really matter here because, whatever "corruptly"
means, Snyder's behavior clearly fits the bill, making this
case a poor one to explore the contours of that term. See
Part III–A, *supra.*

In any event, any uncertainty we might have about "cor-
ruptly" seems unwarranted considering the Court's previous
definitions of that word. In *Arthur Andersen LLP* v.
*United States*, 544 U. S. 696 (2005), we wrote that the term
"'corruptly'" is "normally associated with wrongful, im-
moral, depraved, or evil" conduct. *Id.*, at 705. We there-
fore related the term with "consciousness of wrongdoing."
*Id.*, at 706. Applying that standard definition to § 666's
*mens rea* requirement appears to heave an imposing burden
onto the Government. Prosecutors must prove not only
that a state, local, or tribal official did, in fact, act wrongfully
when accepting the gift or payment, but also that she *knew*
that accepting the gift or payment was wrongful.[7] The ma-

_____

[7] At oral argument, the Government acknowledged that "consciousness
of wrongdoing" roughly translates to knowledge of unlawfulness. Tr. of
Oral Arg. 74–76.

jority worries that it may be unclear to an official whether accepting a gift is, in fact, "wrongful." See *ante*, at 16. But if "corruptly" is read to require knowledge of wrongfulness, any lack of clarity benefits the official. In such circumstances, a prosecutor is almost certain to be unable to meet her burden of proof—as the Government acknowledges. See, *e. g.*, Tr. of Oral Arg. 59–60, 107.[8]

The bottom line is that § 666 is not unique or special. Like other criminal statutes—and especially other anti-public-corruption statutes—§ 666 has various elements, some of which may benefit from further clarification. Down the road, this Court could have had that opportunity with respect to § 666 *if* it had chosen to engage in our usual method of parsing statutes. See, *e. g.*, *Fischer* v. *United States*, 529 U. S. 667, 677, 681 (2000) (clarifying the meaning of federal "benefits" under § 666); *Sun-Diamond*, 526 U. S., at 414 (holding that to establish a violation of § 201(c), "the Government must prove a link between a thing of value conferred upon a public official and a *specific* 'official act' for or because of which it was given" (emphasis added)); *McDonnell* v. *United States*, 579 U. S. 550, 571–572 (2016) (clarifying the "official act" requirement in § 201(a)(3)). Instead, the majority washes its hands of this anticorruption provision, announcing that certain wrongful conduct the statute plainly covers just cannot be included. The majority throws in the towel too soon.

C

As I said earlier, § 666 already provides meaningful guardrails that protect against the "overbreadth" that the majority decries. *Ante*, at 15. But you don't have to take my

─────────

[8] Thus, defining "corruptly" in the same way we have in the past would not rely on a prosecutor's discretion to limit the scope of the statute. See *ante*, at 17; cf. *Marinello* v. *United States*, 584 U. S. 1, 11 (2018). Indeed, though the Government *could* attempt to launch unwarranted prosecutions under § 666, that is as true for § 666 as it is for any other federal criminal statute.

word for that. Other prosecutions of gratuities that the Government has brought under § 666—successfully or unsuccessfully—do not remotely resemble the holiday tips, gift baskets, and sweatshirts around which the majority crafts its decision.[9] That is, even as the Government has consistently maintained that § 666 covers gratuities, its actual prior prosecutions under § 666 were not the dragnet for public school teachers, soccer coaches, or trash collectors that the majority conjures. Rather, the real cases in which the Government has invoked this law involve *exactly* the type of palm greasing that the statute plainly covers and that one might reasonably expect Congress to care about when targeting graft in state, local, and tribal governments. After today, however, the ability of the Federal Government to prosecute such obviously wrongful conduct is left in doubt.

It is also noteworthy that the prosecutions that Snyder describes as proof of the Government's "not reassuring" track record, Reply Brief 18–19, look nothing like the acts of gratitude that worry the majority. The "city building inspector [who] solicit[ed] donations for his favorite youth sports league"? *Id.*, at 18. Well, he admitted to receiving illegal gratuities from an engineer who worked with clients

---

[9] See, *e. g.*, *Scarantino* v. *Public School Employees' Retirement Bd.*, 68 A. 3d 375, 376–377 (Pa. Commw. 2013) (describing a defendant prosecuted under § 666 for receiving a $5,000 cash gratuity in connection with school district contracts); *United States* v. *Musto*, 2012 WL 5879609, *2, n. 2 (MD Pa., Nov. 21, 2012) (defendant prosecuted under § 666 for accepting $1,000 in connection with a municipality's multimillion dollar loan application to a state agency and prior official advocacy); *United States* v. *Bahel*, 662 F. 3d 610, 620–621, 638 (CA2 2011) (defendant prosecuted under § 666 after receiving financial benefits including years of near-monthly cash payments of thousands of dollars, a laptop, first-class plane tickets to India, seats to the U. S. Open tennis tournament, a reduced-rent apartment, and the eventual purchase of that apartment for below-market value in connection with United Nations contracts); *United States* v. *Zimmermann*, 509 F. 3d 920, 926–927 (CA8 2007) (defendant prosecuted for accepting gratuities of $5,000, $1,200, and $1,000 in connection with real-estate development projects).

seeking building permits in San Francisco. The engineer knew that the inspector was a volunteer coach and supporter of "a San Francisco non-profit adult and youth athletic organization," and the engineer arranged for his clients to donate to that organization in connection with inspections of their properties. Press Release, U. S. Attorney's Office, ND Cal., San Francisco Senior Building Inspector Pleads Guilty to Accepting Illegal Gratuities (Dec. 9, 2022). "[I]n several instances, the engineer advised [the inspector] of a client's donation while asking for a final permit or inspection on the client's property." *Ibid.* That same inspector also accepted $30,000 in debt forgiveness from a longtime San Francisco real-estate developer and friend. *Ibid.*

And the "county contractor [who] donat[ed] $2,000 for plaques and food at a luncheon honoring female judges"? Reply Brief 18. He was the owner of a debt collection company that had a nonexclusive contract with Cook County, Illinois, to perform debt collection work. A significant part of the contract was the chance to collect fines owed on unpaid traffic tickets. An official in the Circuit Court of Cook County Clerk's Office—the entity responsible for doling out the traffic debt work—gave his firm half of those collections. The owner then underwrote nearly $2,000 in expenses for the court's Women's History Month Celebration. Why did he cover these expenses? "We gotta stay ahead of [the competition]," the owner told his staff. *United States* v. *Donagher*, No. 1:19–cr–00240 (ND Ill.), ECF Doc. 98, pp. 2–5.[10]

---

[10] Snyder's invocation of *United States* v. *Hamilton*, 46 F. 4th 389 (CA5 2022), is neither persuasive nor relevant here. Snyder says *Hamilton* shows that the Government "has prosecuted campaign contributions." Reply Brief 19. The defendant in *Hamilton* was a Dallas real-estate developer who "supported" local politicians. 46 F. 4th, at 391. He gave money to a nonprofit owned and operated by the campaign manager of one such politician, a Dallas City Council member. "Some of those donations were used for [the nonprofit's] legitimate purposes; others were purportedly given to [the nonprofit], cashed by [the campaign manager], then given to [the politician] personally." *Ibid.* Around an election cycle, "[the de-

None of this means that courts should trust the Government when it says that it does and will continue to enforce a statute with care. That is not how we do statutory interpretation, and for good reason. See *Marinello* v. *United States*, 584 U. S. 1, 11 (2018). But what these examples do show is that § 666's built-in bulwarks seem to be working. Thus, there is simply no reason to think that decades after the courts of appeals first interpreted § 666 to cover gratuities, reading the statute to do so now will "suddenly subject 19 million state and local officials to a new and different regulatory regime." *Ante*, at 14.

## IV

Ultimately, it appears that the real bone the majority has to pick with § 666 is its concern about overregulation—a concern born of the relationship between federal and state governance. The majority's pages of citations to state and local gratuities laws, *ante*, at 6–7, thus belie its ranking so-called "federalism" interests merely "[f]ifth" on its list of reasons for construing § 666 as a bribery-only statute, *ante*, at 14 (emphasis deleted). More than anything, it seems that the majority itself harbors the belief it repeatedly ascribes to Con-

---

veloper] was trying to secure some low-income-housing tax credits for one of his real-estate ventures, the Royal Crest project," and that City Council member "lobbied to have the Royal Crest project included." *Ibid.* "A few years later, [the developer] needed to get a paid-sick-leave ordinance on the ballot in the upcoming election." *Ibid.* So he wrote a $7,000 check to a different member of the Dallas City Council, who made clear that the check "was not a loan" and "had nothing to do with the campaign." *Id.*, at 392. A jury convicted the developer on two § 666 counts, but the Fifth Circuit later vacated the convictions because, in its view, § 666 did not criminalize gratuities. *Id.*, at 393, 399.

On these facts, it is far from clear that *Hamilton* involved legitimate campaign contributions. But it is abundantly clear that Snyder's case does not. If a § 666 conviction involving *real* campaign contributions had reached us, it might have been appropriate to read a *quid pro quo* requirement into the statute for that particular context. See *McCormick* v. *United States*, 500 U. S. 257, 273–274 (1991).

gress: that regulation of gratuities is better left to state, local, and tribal governments, rather than the Federal Government. See, *e. g., ante,* at 15, 20. (No word on why the same could not be said for bribes.)

If Congress shared those policy concerns, however, it chose not to act upon them in this statute. Instead, Congress reached out to regulate state, local, and tribal entities as well as other organizations that receive federal funds, despite the fact that those governments do have their own ethics regulations, as the majority is quick to point out. And, of course, if the majority is correct about Congress's commitment to federalism principles in this area, one wonders why Congress didn't just leave state, local, and tribal entities alone.

Quite to the contrary, Congress chose to enact §666 "to ensure the integrity of organizations participating in federal assistance programs." *Fischer,* 529 U. S., at 678. And that choice was intentional—Congress acted to "addres[s] a legitimate federal concern by licensing federal prosecution in an area historically of state concern." *Sabri,* 541 U. S., at 608, n. Snyder apparently objects to this policy choice, and further complained below that "Congress ha[d] yet to take up" any invitation "to consider rewriting the provision." App. 15. Fortunately for him, today's decision by this Court accomplishes exactly that result.

\*    \*    \*

State, local, and tribal governments have an important role to play in combating public corruption, and, of course, their regulations should reflect the values of the communities they serve. I wholeheartedly agree with the majority's suggestion that, because employees of those governments are our neighbors, friends, and hometown heroes, federal law ought not be read to subject them to prosecution when grateful members of the community show their thanks. See *ante,* at 5.

But nothing about the facts of this case implicates any of that kind of conduct. And the text of §666 clearly covers the kind of corrupt (albeit perhaps non-*quid pro quo*) payment Snyder solicited after steering the city contracts to the dealership. Because reading §666 to prohibit gratuities—just as it always has—poses no genuine threat to common gift giving, but does honor Congress's intent to punish rewards corruptly accepted by government officials in ways that are functionally indistinguishable from taking a bribe, I respectfully dissent.

Page Proof Pending Publication

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None